IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANHEUSER-BUSCH INBEV S.A. and <br> ANHEUSER-BUSCH, LLC <br><br> Plaintiffs, <br><br> v. <br><br> HEINEKEN USA INC., HEINEKEN BROUWERIJEN B.V., HEINEKEN EXPORT AMERICAS B.V., and HEINEKEN GLOBAL PROCUREMENT B.V., <br><br> Defendants. | Index No. |

## COMPLAINT

Plaintiffs Anheuser-Busch InBev S.A. and Anheuser-Busch, LLC (collectively, "ABI" or "Plaintiffs") complain and allege as follows against Defendants Heineken USA Inc., Heineken Brouwerijen B.V., Heineken Export Americas B.V., and Heineken Global Procurement B.V. (collectively, "Heineken" or "Defendants"):

## NATURE OF THE ACTION

1. This is an action for patent infringement of four U.S. Patents – U.S. Patent Nos. 9,162,372 (the "'372 Patent"); 9,517,876 (the "'876 Patent"); 9,555,572 (the "'572 Patent"); and 9,994,453 (the "'453 Patent") (collectively, the "Asserted Patents") – arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq.

2. Plaintiffs have filed this lawsuit to stop Defendants' unlawful infringement of Plaintiffs' patented inventions and to obtain damages, injunctive, and other relief.

**THE PARTIES**

3. Anheuser-Busch InBev S.A. is a corporation organized and existing under the laws of Belgium with its principal place of business in Leuven, Belgium.

4. Anheuser-Busch, LLC ("Anheuser-Busch") is a wholly-owned indirect subsidiary of Anheuser-Busch InBev S.A. and is a Missouri limited liability company with its principal place of business in St. Louis, Missouri. Anheuser-Busch is the largest brewer in the United States. Its brewery in St. Louis, Missouri, opened in 1852, has been designated a National Historic Landmark.

5. Heineken USA Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 360 Hamilton Avenue, Suite 1103, White Plains, New York 10601. Heineken USA Inc. is responsible for importing Heineken-brand products into the United States, including the Heineken BrewLock system and the Blade (the "Infringing Products"), and selling those products to wholesalers within the United States. The Infringing Products are blow-molded bag-in-container bottles, their associated components, and end products used for dispensing beer.

6. Heineken Brouwerijen B.V. is a corporation organized and existing under the laws of the Netherlands, with its principal place of business located at Tweede Weteringplantsoen 21, Amsterdam, Netherlands. Heineken Brouwerijen B.V. is responsible for operating the brewery that fills Heineken products, including the Infringing Products, with beer.

7. Heineken Export Americas B.V. is a corporation organized and existing under the laws of the Netherlands, with its principal place of business located at Tweede Weteringplantsoen 21, Amsterdam, Netherlands. Heineken Export Americas B.V. is involved in the process of manufacturing, filling, and/or importing into the United States the Infringing Products.

8. Heineken Global Procurement B.V. is a corporation organized and existing under the laws of the Netherlands, with its principal place of business located at Tweede Weteringplantsoen 21, Amsterdam, Netherlands. Heineken Global Procurement B.V. is responsible for Heineken's global supply chain, including the supply chain for Infringing Products.

**JURISDICTION AND VENUE**

9. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. Venue is proper in this judicial district under 28 U.S.C. §1400(b).

11. In particular, Heineken USA Inc. resides in this district because it is incorporated in New York and has a regular and established place of business in White Plains, New York at 360 Hamilton Avenue, Suite 1103, from where it coordinates its importation activities and its sales and distributions within the United States. Defendants Heineken Brouwerijen B.V., Heineken Export Americas B.V., and Heineken Global Procurement B.V. have a regular and established place of business in this district, including, for example, through business conducted by their affiliated company, Heineken USA Inc.

12. Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with this forum as a result of business conducted within the State of New York and the Southern District of New York. For example, Heineken USA Inc. resides in this district as it is incorporated in New York and has a regular and established place of business in White Plains, New York at 360 Hamilton Avenue, Suite 1103, from where it coordinates its importation activities and its sales and distributions within the United States. Heineken Brouwerijen B.V., Heineken Export Americas B.V., and Heineken Global Procurement B.V.

also coordinate their importation activities, sales and distributions within the United States through Heineken USA Inc., which is located in New York, and import Infringing Products into this judicial district.

13. Personal jurisdiction also exists specifically over Defendants because they, directly or through subsidiaries or intermediaries, make, use, offer for sale, sell, import, advertise, make available and/or market products in this forum that infringe one or more claims of the Asserted Patents, as alleged more particularly below. Such acts of direct and/or indirect patent infringement in this district have harmed and continue to harm ABI in this district.

## THE PATENTS-IN-SUIT

14. On October 20, 2015, the United States Patent and Trademark Office (the "USPTO") duly and legally issued the '372 Patent, entitled "Integral Two Layer Preform, Process And Apparatus For The Production Thereof, Process For Producing A Blow-Moulded Bag-In-Container, And Bag-in-Container Thus Produced."  A true and accurate copy of the '372 patent is attached hereto as Exh. 1.

15. On December 13, 2016, the USPTO duly and legally issued the '876 Patent, entitled "Integrally Blow-Moulded Bag-In-Container Having An Inner Layer And The Outer Layer Made Of The Same Material And Preform For Making It."  A true and accurate copy of the '876 patent is attached hereto as Exh. 2.

16. On January 31, 2017, the USPTO duly and legally issued the '572 Patent, entitled "Integrally Blow-Moulded Bag-in-Container Comprising An Inner Layer And An Outer Layer Comprising Energy Absorbing Additives, Preform For Making It And Process For Producing It."  A true and accurate copy of the '572 patent is attached hereto as Exh. 3.

17. On April 17, 2018, the USPTO duly and legally issued the '453 Patent, entitled "Integrally Blow-Moulded Bag-In-Container Having An Inner Layer And The Outer Layer Made Of The Same Material And Preform For Making It."  A true and accurate copy of the '453 patent is attached hereto as Exh. 8.

18. ABI is the owner by assignment of each of the Asserted Patents.

19. Heineken had notice of the Asserted Patents (or the applications that matured into these patents) at least as early as November 2014, when it approached ABI to discuss the Asserted Patents.  No agreement was reached at that time or at any time thereafter.

## BACKGROUND

20. ABI is the world's largest brewer, and one of the world's top five consumer product companies.  ABI can trace its tradition of brewing a beer of the highest quality back hundreds of years.  Anheuser-Busch is one of this country's preeminent companies, responsible for producing, distributing and selling great American brands such as Budweiser, Bud Light, Michelob Ultra, Busch, Goose Island, Blue Point, Devil's Backbone, and Elysian.  These beers are all brewed and packaged in various U.S. breweries, including in Missouri, New Jersey, New York, California, Florida, Texas, Ohio, New Hampshire, Virginia, Colorado, and Georgia.  Other world-renowned brands, such as Stella Artois, Beck's, Leffe, and Hoegaarden are imported by Anheuser-Busch from ABI, and are marketed and sold in the United States by Anheuser-Busch.

21. ABI places a great value on research and development in seeking new innovations for methods and products that can better serve its customer base.  In 2016 alone, for example, ABI had 135 pending patent families covering its inventions, including the Asserted Patents.

22. The Asserted Patents generally relate to blow-molded bag-in-container devices, also referred to as, *e.g.*, "bag-in-bottles" or "bottle-in-bottles," used for dispensing liquid.

23. Generally, draft beer has been stored in stainless steel kegs, and is dispensed by introducing gas directly into the keg, which forces the beer out. However, this gas can, under certain circumstances, affect the quality of the beer. Aware of this problem, major beer producers invested resources and time into attempting to address how to protect the draft beer from the gas. Various companies attempted to devise solutions over the years, such as a container made of plastic having an inner liner and an outer container holding the inner liner. But only ABI's research and development team was able to truly innovate in this area.

24. In ABI's novel bag-in-container bottle, a vent extends from the external environment through the neck of the bottle and into the space (the "interface") between the inner bag and the outer container. *See, e.g.*, Exh. 1, Fig. 1, shown below.



Exh. 1, Fig. 1

This vent allows a pressurized gas to be introduced through the neck into the interface, which squeezes the inner bag and dispenses the liquid in it, all without allowing any gas to contact the beer itself.

25. ABI researchers identified that the layers of the bag-in-container would still separate upon pressurization even if both layers were made with polyethylene terephthalate ("PET"). This finding was unexpected, has advantages over use of other materials, and results in a fully recyclable container. ABI researchers also identified the importance of the inner bag material having a melting temperature greater than the melting temperature of the outer container material. ABI researchers further identified that introducing an additive is beneficial in the manufacture of the device because it alters the temperature profile so that both layers can be blow molded together.

26. ABI's innovative bag-in-container technology provides superior-quality beer with an extended shelf-life. In addition, the new technology produces a bag-in-container device (the "Bottle") which is fully recyclable, because both component parts are made of PET. ABI's bag-in-container is much lighter than traditional stainless steel kegs and is therefore easier to handle in the retail trade. Unlike stainless steel kegs, all of the beer in the inner container is fully dispensed, eliminating wasted product and therefore increasing its efficiency. Finally, there is no deposit on the Bottle, making it more economical for the retailers.

27. Bag-in-containers can be manufactured through a process known as "integral blow-molding." Preforms are first formed by injecting molten plastic into molds. Once the preforms are cooled and removed from the molds, a smaller inner preform is fitted into a complementary outer preform forming a preform assembly which is then introduced into an infrared heated oven where the preform assembly is blow-molded into the final bag-in-container device.

28. Heineken manufactures, sells, and imports into the United States bag-in-container devices, including the Infringing Products.

29. Heineken's importation of these products is in line with Heineken's innovation plan, as described in Heineken's own presentation: "Copy, and call it Innovation." Exh. 7 at 31. Accordingly Heineken has copied ABI's innovative designed for the bottle-in-bottle device and attempt to call it their "innovation." It is not. This technology is covered by ABI's Asserted Patents.

30. For convenience, the infringing features of the Brewlock device are illustrated below. However, upon information and belief, all of the Infringing Products contain these same infringing features. *See* Exh. 6 at 2 ("Blade operates with…[the] BrewLock system that pushes air between multiple layers within an 8-liter disposable PET keg").

31. The Infringing Products have an outer container ("outer wall") and an inner bag ( "inner wall"), as illustrated by the annotated image below (*see* Exh. 4 at 3):



32. The inner bag and outer container of the Infringing Products have a neck region, a body portion, and/or a mouth, as evidenced by the images below (*see, e.g.,*

www.brewlocksystem.com, and press on the red dot labeled "click to begin" located within the bottle, *see* Exh. 10):



33. Heineken admits that the outer container is made of a single layer of PET, at least because its Brewlock bottles are labeled with the PET Logo. *See also* Exh. 5 at 2 (Brewlock is "a multi-component system that comprises two 20-L PET bottles…The main components are the two PET bottles. These are designed with one inside of the other. The outer bottle is clear PET; the inner—a less rigid, collapsible structure—is silver and contains additives to offer the best protection to the beer…") The inner bag is also made of a single layer comprising PET; for example, Heineken's literature calls its product a "Brewlock PET Keg." *See* Exh. 4 at 19 (in footer). *See also* Exh. 5 at 2 (Brewlock is "a multi-component system that comprises two 20-L PET bottles…The main components are the two PET bottles. These are designed with one inside of the other. The outer bottle is clear PET; the inner—a less rigid, collapsible structure—is silver and contains additives to offer the best protection to the beer...").

9

34. In addition to PET, the inner bag also includes energy absorbing additives. *See* Exh. 5 at 2 (Brewlock is "a multi-component system that comprises two 20-L PET bottles…The main components are the two PET bottles. These are designed with one inside of the other. The outer bottle is clear PET; the inner—a less rigid, collapsible structure—is silver and contains additives to offer the best protection to the beer, <u>including pigments to protect from a full spectrum of light waves</u>") (emphasis added).

35. The additives included in the inner bag alter its heating profile.

36. The inclusion of additives in the inner bag's PET results in it having a melting temperature greater than or equal to the melting temperature of the outer container's single-layer PET.

37. The Infringing Products include a vent located at the neck region between the outer container and inner bag.

38. The outer container and the inner bag of the Infringing Products are in direct contact, but can be released from each other when pressurized gas is introduced between them. *See, e.g.,* Exh. 4 at 3 ("[b]y forcing compressed air in between the outer bottle and inner container, the inner container is compressed, pushing beer out of the keg into the beer line.").

39. Heineken requires that this pressurized gas be obtained from a source of pressurized gas attached to the vent of the Infringing Products (*see* Exh. 4 at 6):



*See* Exh. 4 at 18 ("Only use [Brewlock] in combination with the Brewlock system EasyFit coupler and compressed air from the supplied Draught System Compressor Unit (DCSU)…").

40. The Infringing Products are a bag-in-container device. *See* Exhs. 4, 6.

41. Literature describing the Infringing Products is available on Heineken's website at http://www.brewlocksystem.com and https://global.blade.shop/en/how-it-works/, and is attached hereto as Exhs. 4 and 9, respectively.

42. Additional information describing the Infringing Products is available at http://www.packworld.com/package-design/structural/recyclable-pet-beer-keg-locks-quality and http://chilledmagazine.com/heineken-blade-countertop-draught-beer-system, attached hereto as Exhs. 5 and 6, respectively.

## COUNT I
### (Defendants' Infringement of the '372 Patent)

43. ABI realleges and incorporates the allegations in paragraphs 1-42, above, as though set forth herein.

44. The Infringing Products have an inner bag made of a single layer of PET whose melting temperature must be greater than or equal to the melting temperature of the outer container's single-layer PET.

45. Heineken has infringed and continues to directly infringe, contributorily infringe and/or induce others to infringe, literally and/or under the doctrine of equivalents, Claim 1 of the '372 Patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, bag-in-container products, including the Infringing Products, in violation of 35 U.S.C. § 271.

46. The Infringing Products are especially adapted for, and have no substantial use other than, infringing the '372 Patent and thus Heineken contributes to infringement of the '372 Patent.

47. In addition, Heineken actively induces infringement of the '372 Patent through, for example, its marketing activities, product brochures, manuals, and technical information guides.

48. Heineken's infringement of the '372 Patent has been and continues to be willful and deliberate.  Heineken had actual knowledge of the '372 Patent because it had notice of the '372 Patent as early as November 2014 when it discussed the Asserted Patents (or the applications that matured into them) with ABI.

49. Heineken has committed and continues to commit all of the above acts of infringement in willful disregard of the claims of the '372 Patent and therefore ABI is entitled to an award of exemplary damages, attorneys' fees, and costs.

50. As a result of Heineken's infringement of the '372 Patent, ABI has suffered damages and will continue to suffer damages.

51. Under 35 U.S.C. § 283, ABI is entitled to a permanent injunction against further infringement. Heineken's wrongful conduct has caused and will continue to cause ABI to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing ABI's patented inventions. ABI has suffered harm to goodwill, lost customers, lost market share, and tarnishment to its brand due to Heineken's competing bag-in-container products, including the Infringing Products. Upon information and belief, Heineken will continue to infringe the '372 Patent unless permanently enjoined by this Court.

## COUNT II
### (Defendants' Infringement of the '876 Patent)

52. ABI realleges and incorporates the allegations in paragraphs 1-51, above, as though set forth herein.

53. The Infringing Products have an outer container made of a single layer of PET as well as a collapsible inner bag also made of a single layer of PET. This inner bag is suitable for holding beer.

54. Heineken has infringed, and continues to directly infringe, contributorily infringe and/or induce others to infringe, literally and/or under the doctrine of equivalents, at least Claims 1-5 of the '876 Patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, bag-in-container products, including the Infringing Products, in violation of 35 U.S.C. § 271.

55. The Infringing Products are especially adapted for, and have no substantial use other than, infringing the '876 Patent and thus Heineken contributes to infringement of the '876 Patent.

56. In addition, Heineken actively induces infringement of the '876 Patent through, for example, its marketing activities, product brochures, manuals, and technical information guides.

57. Heineken's infringement of the '876 Patent has been and continues to be willful and deliberate. Heineken had actual knowledge of the '876 Patent because it had notice of the '876 Patent as early as November 2014 when it discussed the Asserted Patents (or the applications that matured into them) with ABI.

58. Heineken has committed and continues to commit all of the above acts of infringement in willful disregard of the claims of the '876 Patent and therefore ABI is entitled to an award of exemplary damages, attorneys' fees, and costs.

59. As a result of Heineken's infringement of the '876 Patent, ABI has suffered damages and will continue to suffer damages.

60. Under 35 U.S.C. § 283, ABI is entitled to a permanent injunction against further infringement. Heineken's wrongful conduct has caused and will continue to cause ABI to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing ABI's patented inventions. ABI has suffered harm to goodwill, lost customers, lost market share, and tarnishment to its brand due to Heineken's competing bag-in-container products, including the Infringing Products. Upon information and belief, Heineken will continue to infringe the '876 Patent unless permanently enjoined by this Court.

### COUNT III
**(Defendants' Infringement of the '572 Patent)**

61. ABI realleges and incorporates the allegations in paragraphs 1-60, above, as though set forth herein.

62. The Infringing Products have at least one of the outer container and inner bag that contains certain additives which change the heating profile of the layer.

63. Heineken has infringed, and continues to directly infringe, contributorily infringe and/or induce others to infringe, literally and/or under the doctrine of equivalents, at least Claims 7-17 of the '572 Patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, bag-in-container products, including the Infringing Products, in violation of 35 U.S.C. § 271.

64. The Infringing Products are especially adapted for, and have no substantial use other than, infringing the '572 Patent and thus Heineken contributes to infringement of the '572 Patent.

65. In addition, Heineken actively induces infringement of the '572 Patent through, for example, its marketing activities, product brochures, manuals, and technical information guides.

66. Heineken's infringement of the '572 Patent has been and continues to be willful and deliberate. Heineken had actual knowledge of the '572 Patent because it had notice of the '572 Patent as early as November 2014 when it discussed the Asserted Patents (or the applications that matured into them) with ABI.

67. Heineken has committed and continues to commit all of the above acts of infringement in willful disregard of the claims of the '572 Patent and therefore ABI is entitled to an award of exemplary damages, attorneys' fees, and costs.

68. As a result of Heineken's infringement of the '572 Patent, ABI has suffered damages and will continue to suffer damages.

69. Under 35 U.S.C. § 283, ABI is entitled to a permanent injunction against further infringement. Heineken's wrongful conduct has caused and will continue to cause ABI to

suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing ABI's patented inventions. ABI has suffered harm to goodwill, lost customers, lost market share, and tarnishment to its brand due to Heineken's competing bag-in-container products, including the Infringing Products. Upon information and belief, Heineken will continue to infringe the '572 Patent unless permanently enjoined by this Court.

## COUNT IV
### (Defendants' Infringement of the '453 Patent)

70. ABI realleges and incorporates the allegations in paragraphs 1-69, above, as though set forth herein.

71. The Infringing Products have a single layer outer container, as well as a single layer inner bag including an opening to an outer atmosphere defined by a lip which is collapsible upon introduction of a pressurized gas.

72. Heineken has infringed, and continues to directly infringe, contributorily infringe and/or induce others to infringe, literally and/or under the doctrine of equivalents, at least Claims 1, 2, and 4-7 of the '453 Patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, bag-in-container products, including the Infringing Products, in violation of 35 U.S.C. § 271.

73. The Infringing Products are especially adapted for, and have no substantial use other than, infringing the '453 Patent and thus Heineken contributes to infringement of the '453 Patent.

74. In addition, Heineken actively induces infringement of the '453 Patent through, for example, its marketing activities, product brochures, manuals, and technical information guides.

75. Heineken's infringement of the '453 Patent has been and continues to be willful and deliberate. Heineken had actual knowledge of the '453 Patent because it had notice of the '453 Patent as early as November 2014 when it discussed the Asserted Patents (or the applications that matured into them) with ABI.

76. Heineken has committed and continues to commit all of the above acts of infringement in willful disregard of the claims of the '453 Patent and therefore ABI is entitled to an award of exemplary damages, attorneys' fees, and costs.

77. As a result of Heineken's infringement of the '453 Patent, ABI has suffered damages and will continue to suffer damages.

78. Under 35 U.S.C. § 283, ABI is entitled to a permanent injunction against further infringement. Heineken's wrongful conduct has caused and will continue to cause ABI to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing ABI's patented inventions. ABI has suffered harm to goodwill, lost customers, lost market share, and tarnishment to its brand due to Heineken's competing bag-in-container products, including the Infringing Products. Upon information and belief, Heineken will continue to infringe the '453 Patent unless permanently enjoined by this Court.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and pray that the Court grant the following relief to Plaintiffs:

A. A judgment that the '372 Patent, '876 Patent, '572 Patent, and '453 Patent are valid and enforceable;

B. A judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the '372 Patent, '876 Patent, '572 Patent, and '453 Patent;

C. An award of damages adequate to compensate for Defendants' infringement of the Asserted Patents, including all pre-judgment and post-judgment interest at the maximum rate permitted by law; an accounting for infringing sales not presented at trial and an award of additional damages for any such infringing sales;

D. An award of damages for pre-issuance infringement activities under 35 U.S.C. § 154(d);

E. An injunction barring Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with Defendants, and its parents, subsidiaries, divisions, successors, and assigns, from further acts of infringement of the Asserted Patents;

F. A judgment finding Defendants' infringement of the Asserted Patents to be willful;

G. An award of trebled damages under 35 U.S.C. § 284;

H. A declaration that this case is exceptional under 35 U.S.C. § 285, and that Plaintiffs be awarded its attorneys' fees and costs;

I. Any other remedy to which Plaintiffs may be entitled.

Dated:     April 30, 2018

                                    Respectfully submitted,

/s/ Dorothy R. Auth
Dorothy R. Auth
Howard Wizenfeld
David A. Cole (admission pending)
Michael J. Sebba
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000

Peter E. Moll (*pro hac vice* pending)
Brian Wallach
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C 20001
Telephone:  (202) 862-2200

*Attorneys for Plaintiffs*